## STORY et al. v. STANFIELD.

(Circuit Court of Appeals, Ninth Circuit.   September 12. 1921.)

No. 3633.

Sales ⚖═32—Complete contract held evidenced by telegrams and customs.

A telegram, "Wire lowest price you will sell the 7,000 S. & W. yearling ewes," and an answering telegram, "Lowest price on S. & W. yearling ewes eleven fifty this subject to immediate acceptance," *held*, together with custom and usage and Rev. Codes Mont. §§ 5032, 5035, 5036, to evidence a complete contract for the sale of the sheep, where defendant's offer was accepted within 24 hours, as against an objection that there was no meeting of the minds of the parties upon the price to be paid for the sheep, in that price could only be determined upon delivery, and that the offer was not accepted immediately.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action at law, brought by T. B. Story and L. P. Work, copartners doing business under the firm name and style of Story & Work, to recover damages from defendant, R. N. Stanfield, for breach of contract to deliver certain sheep as provided in the contract. Demurrer to the amended complaint, on the ground that it does not state facts sufficient to constitute a cause of action, sustained. Plaintiffs bring error. Reversed, with directions.

Frederick H. Drake, of Portland, Or., and C. B. Nolan and Wm. Scallon, both of Helena, Mont., for plaintiffs in error.

Bauer, Greene & McCurtain, of Portland, Or., and Ed. R. Coulter, of Weiser, Idaho, for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. The amended complaint alleges in substance that the plaintiffs, Story & Work, were copartners in business, residing at Bozeman, Mont.; that they were engaged in the live stock business, and as such bought and sold ewes; that plaintiffs are residents of the state of Montana; that the defendant, Stanfield, is a resident of the city of Stanfield, state of Oregon; that William Rea, Jr., was a live stock broker engaged in the business of buying and selling live stock on commission, and known to be such to both plaintiffs and defendant, and for many years prior to the 25th day of May, 1917, and in many transactions involving the sale of live stock, including sheep, the said Rea, as such broker, at divers times purchased from and sold to the said Stanfield several thousand head of sheep; that on the 28th day of April, 1917, Stanfield entered into a contract with the plaintiffs, through the said Rea as broker, by the terms and provisions of which Stanfield purchased from the said plaintiffs 7,000 head of yearling ewes at a price agreed upon; that under and by virtue of the terms of said contract the ewes were to be delivered by the plaintiffs to Stanfield, or order, at White Sulphur Springs, Mont., and Three Forks, Mont., on

July 1, 1917; that Stanfield at that time paid to the said Story & Work, as part payment for the purchase price of said ewes, the sum of $4,000; that after the sale was made to Stanfield of said ewes through the said Rea as broker, and on the 25th day of May, 1917, the plaintiffs desiring to repurchase from the said Stanfield, the defendant, the said ewes, and to purchase all of his rights in the said contract for sale of said ewes, the said Rea, acting as broker in that behalf, sent to the defendant at his home in Oregon, from Billings, Mont., a telegram reading as follows:

"May 25, 1917.

"R. N. Stanfield, Stanfield, Oregon. Wire lowest price you will sell the seven thousand Story & Work yearling ewes. Wm. Rea, Jr."

It is alleged that the said Rea meant thereby the ewes theretofore purchased by the said Stanfield from the plaintiffs, as before referred to. It is alleged that in reply to said telegram said Stanfield, on the afternoon of the 26th day of May, 1917, sent to the said Rea, at Billings, Mont., a telegram from Portland, Or., reading as follows:

"Wm. Rea, Billings, Montana. Lowest price on Story & Work yearling ewes eleven fifty this subject to immediate acceptance.

"[Signed] R. N. Stanfield."

At the time of the receipt of said telegram at Billings on the afternoon of the 26th day of May, 1917, the said Rea had left the said city of Billings for the city of Butte, state of Montana, and said telegram was forwarded to him by wire to the said city of Butte, where the same was received by him about 8 o'clock on the evening of that date, and immediately upon its receipt by him the said Rea accepted for himself and on behalf of the said Story & Work the offer so made, by then and there delivering for transmission at the Western Union Telegraph Company's office at the city of Butte, prepaying the charge for transmission of same, a telegram directed to the said defendant at his home at Stanfield, Or., said telegram reading as follows:

"Butte, May 26, 1917.

"R. N. Stannfield, Stanfield, Oregon. Sold your Story & Work seven thousand yearling ewes eleven fifty. Mail you contract and check for seven thousand dollars to-morrow. Wm. Rea, Jr."

Plaintiffs allege on information and belief that said telegram was thereupon sent to and received by the said Stanfield on the date named. Plaintiffs further allege that in connection with the said transactions there was a well-known custom in the live stock trade, to wit, the sheep trade, according to which immediate acceptance in the offer referred to meant that the offer should be accepted at least within 24 hours after the same was made, and in that connection plaintiffs allege that in the instant case the acceptance of the offer by the plaintiffs and by the said Rea in their behalf was an immediate acceptance; that there was in the live stock trade, to wit, the sheep trade, a custom and usage that, where delivery of the live stock was to be made in the future, there should be paid to the seller part of the purchase price not exceeding 8 per cent. of the estimated total price, unless otherwise agreed upon, and payable in money or negotiable instruments, and that transactions of

that character could be carried on in the name of the broker without disclosing the principal's name; that pursuant to said custom, and agreeably to the terms of said contract of sale, and on the 27th day of May, 1917, the said Rea, for and on behalf of the plaintiffs, sent by mail, postage prepaid, a letter addressed to the defendant at Stanfield, Or., inclosing a check for $7,000, and likewise inclosing said written memorandum of the contract of sale and purchase; that said check was good: that said Wm. Rea, Jr., Agent, had a checking account in the bank on which said check was drawn more than sufficient to pay the same; and that it would have been paid on presentation to said bank and was equivalent to cash. Plaintiffs further allege that, although the letter containing the check and memorandum was received by the defendant in due course of mail, the defendant failed and neglected to advise the said Rea in any manner regarding same until the 14th day of June, 1917, when the said Rea received by mail a letter from the defendant Stanfield, returning said check, said letter reading as follows:

"Stanfield, Oregon, June 12, 1917.

"Wm. Rea, Jr., Billings, Mont. Dear Sir: Referring to your letter and telegrams concerning the Story & Work yearling ewes, you will note that I quoted you a price for immediate acceptance, and, as I did not receive a reply, I concluded that you did not want them. The price on yearlings was steadily advancing, and I was unable to hold them for you at the price quoted. I am returning herewith your check for $7,000, as I am unable to sell these ewes at the price offered in your contract.

"Yours truly, R. N. Stanfield,
"By Don Pruitt."

Plaintiffs further allege that the customs and usages hereinbefore mentioned were known to plaintiffs and defendant, and to the said Rea, and said dealings, as evidenced by said telegrams and letters and as conducted by the said Rea for and in behalf of the plaintiffs, were carried on agreeably to said usages and customs, and that the same were generally and uniformly observed in the case of sales of live stock, and particularly of sheep; that by the sending of said letter by Stanfield, dated June 12, 1917, and received by the said Rea on the 14th of June, 1917, and by the return of the check referred to, the said Stanfield wrongfully and without cause breached the said contract entered into by him with the plaintiffs, as evidenced by said telegrams and letters; that by reason of said breach of said contract by the said defendant, plaintiffs have been damaged in the sum of $21,000, for which amount, together with costs of suit, plaintiffs demand judgment against the defendant.

To this complaint a demurrer was interposed by the defendant, on the ground that said complaint did not state facts sufficient to constitute a cause of action. The court below was of the opinion that the minds of the parties never met as to the terms and conditions of the alleged contract of repurchase as evidenced by the telegrams and letters in the record.

Plaintiffs concede that the telegrams alone were not sufficient to establish a contract, but that they must be read in the light of the original contract of sale of April 28, 1917. The title of the defendant to these

ewes rests upon the original contract. The ewes had not been delivered to the defendant, but were to be delivered on July 1, 1917, at designated places. In less than a month after the original contract had been entered into by the parties, and more than a month before the delivery of the sheep was to be made as required by the contract, Rea, acting as a broker, submitted to the defendant by telegram a proposal to repurchase the sheep, and asked for the lowest price. The defendant knew from the original contract what sheep were referred to in the Rea telegram. The defendant replied by telegraph, fixing the price subject to immediate acceptance. Rea telegraphed within 24 hours his acceptance. The complaint alleges that it was a well-known custom in the live stock trade, to wit, the sheep trade, that an acceptance within 24 hours was an immediate acceptance. By the demurrer the defendant admits this allegation to be true. Rea also mailed to the defendant a check for $7,000, with written memoranda of the contract of sale and purchase. It is alleged that this check was good, and was in an amount sufficient under the custom and usages of the sheep trade to meet the requirements of a purchase for future delivery. It is alleged that it was also the custom that such a transaction could be carried on in the name of the broker. The Revised Codes of Montana of 1907 provide as follows:

Section 5035: "A contract is to be interpreted according to the law and usage of the place where it is to be performed. * * * "

Section 5036: "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

Section 5032: "A contract must receive such an interpretation, as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done, without violating the intention of the parties."

What more was required to make this contract complete? In what respect did the minds of the parties fail to meet? The only objection that Stanfield made to the transaction, as set forth in the telegrams of May 25th and 26th, was that the price he quoted was not accepted immediately. But it was accepted immediately, if we are to accept as true the allegations of the complaint that immediate acceptance meant that the offer should be accepted at least within 24 hours after the same was made. The objection is now made that there was no meeting of the minds of the parties upon the price to be paid for the sheep, but the full purchase price could only be determined upon the delivery of the sheep on July 1, 1917. In the meantime all that the custom and usage of the trade required for such a future delivery was the payment to the defendant of a sum not exceeding 8 per cent. of the estimated total price. This payment Rea made for and on behalf of the plaintiffs, and the transaction was thus completed. The minds of the parties had fully met upon all the essential terms of the contract, providing, of course, the allegations of the complaint are true. If they are not true, their denial will present issues of fact for the jury.

The judgment of the court below is reversed, with directions to overrule the demurrer.